IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case #2:18-cr-00193-NIQA-1 |
| | : | |
| DKYLE JAMAL BRIDGES | : | |

**ORDER**

**AND NOW**, to wit, this _____ day of _____ 2018, this Court having considered Defendant Dkyle Jamal Bridges' Motion to Dismiss Indictment, and the Government's response thereto, it is hereby **ORDERED** that the Defendant's Motion is **GRANTED**, and Counts One through Six of the Indictment are hereby **DISMISSED**.

**BY THE COURT:**

_____
*Nitza I Quinones Alejandro, DCJ*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case #2:18-cr-00193-NIQA-1 |
| | : | |
| DKYLE JAMAL BRIDGES | : | |

**DEFENDANT'S MOTION TO DISMISS INDICTMENT**

TO THE HONORABLE NITZA I QUINONES ALEJANDRO, JUDGE OF THE SAID COURT:

Defendant, Dkyle Jamal Bridges, by and through his attorney, Andrew David Montroy, hereby moves to dismiss Counts One through Six of the Indictment charging him with: Conspiracy to Engage in Sex Trafficking via Force, Threats and Coercion, and in Sex Trafficking of Minors, in violation of 18 U.S.C. §1594(c); two counts of Distribution of Sex Trafficking, in violation of 18 U.S.C. §1591(a)(1), (b)(1); three counts of Sex Trafficking of Minors Via Force, Threats and Coercion, in violation of 18 U.S.C. §1591(a)(1), (b)(1) and (b)(2); and, Aiding and Abetting, in violation of 18 U.S.C. §2. The Indictment fails to set forth sufficient factual orientation for Mr. Bridges to formulate his defense or assert a future double jeopardy violation. Therefore, the Indictment contravenes Federal Rule of Criminal Procedure 7, as well as the Fifth and Sixth Amendment.

**WHEREFORE**, for the reasons set forth in the accompanying Memorandum of Law, as well as any other reasons which may become apparent at a hearing or the Court deems just, Defendant, Dkyle Jamal Bridges, respectfully requests this Honorable Court grant this Motion and dismiss Counts One through Six of the Indictment against him.

        Respectfully submitted,

        _____*/s/ Andrew Montroy*_____
Law Offices of Andrew David Montroy
By:  Andrew David Montroy, Esquire
1500 Walnut Street, 22nd Floor
Philadelphia, PA  19102
(215) 735-1850
amontroy@gmail.com
Attorney for Defendant Bridges

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case #2:18-cr-00193-NIQA-1 |
| | : | |
| DKYLE JAMAL BRIDGES | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS INDICTMENT**

Defendant, Dkyle Jamal Bridges, is charged in a six-count Indictment. Specifically, he is charged in: Count One, Conspiracy to Commit Sex Trafficking, in violation of 18 U.S.C. §1594(c); Counts Two and Three, Sex Trafficking by Force, Threats and Coercion, in violation of 18 U.S.C. §1591(a)(1), (b)(1); Counts Four, Five, and Six, Sex Trafficking of Minors by Force, Fraud or Coercion; and, Aiding and Abetting, in violation of 18 U.S.C. §1591(a)(1), (b)(1), (b)(2), and 2. However, the Indictment is woefully deficient in setting forth a factual orientation that allows Mr. Bridges to prepare a defense and assert a future claim of double jeopardy. Counts One through Six allege victims only by initials, the time period specified for the alleged conspiracy spans nearly six years and the periods specific for the alleged violations span over five years (Count Two), four months (Count Three), a year-and-a-half (Count Four) and a month and-a-half (Counts Five and Six), and the government has failed to provide sufficient factual basis for the laundry list of ways that Mr. Bridges allegedly enticed, harbored, transported, provided, obtained, and maintained the alleged victims.

For these reasons, the Indictment must be dismissed to comport with Federal Rule of Criminal Procedure 7(c)(1), as well as the Fifth and Sixth Amendments to the United States Constitution.

I.  BACKGROUND

In Count One, the Indictment alleges that the conspiracy occurred "[f]rom in or around 2012, through on or about September 21, 2017" —a span of almost six years — "in Philadelphia and Delaware County, in the Eastern District of Pennsylvania, and elsewhere."  Count One fails to identify any victims involved, the manner and means by which the conspiracy took place, or overt acts taken in furtherance of the conspiracy.  In Count Two, the Indictment alleges the relevant conduct occurred "from in or around 2012, through on or about September 17, 2017, in Delaware County, in the Eastern District of Pennsylvania, and elsewhere," and the alleged victim is identified as "Z.W."  Count Three mirrors identical language and alleges that the relevant conduct occurred "from in or around February 2016, through in or around May 2016, in Delaware County, in the Eastern District of Pennsylvania, and elsewhere," and the alleged victim is identified as "J.S."  In Count Four, the Indictment alleges that the relevant conduct occurred "[f]rom in or around February 2016 through on or about September 21, 2017" — a span of over a year and-a-half — "in Philadelphia and Delaware County, in the Eastern District of Pennsylvania, and elsewhere," and the minor is identified as "B.T."  In Counts Five and Six, the Indictment alleges that the relevant conduct occurred "[f]rom in or around October 2016, through on or about November 15, 2016, in Delaware County, in the Eastern District of Pennsylvania, and elsewhere," and the minors are identified as "N.G." and "L.C.," respectively.

Otherwise, the counts state no facts, and instead merely recite the language of 18 U.S.C. §1591(a)(1), (b)(1), (b)(2) and (c) to charge Mr. Bridges with all but one of the varieties of conduct covered by the statute, alleging in each count, that he:

> knowingly . . . recruited, enticed, harbored, transported, provided, obtained, and maintained the minor victims in reckless disregard of the fact, that force, threats, and means of force would be used to cause [B.T., N.G. and L.C.] to engage in a commercial sex act, and knowing and in reckless disregard of the fact, that [B.T.,

>N.G. and L.C.] had not attained the age of 18 years, and would be caused to engage in a commercial sex act, and further having had a reasonable opportunity to observe [B.T., N.G. and L.C.].

Indictment, at 5-7.  None of the counts state any facts concerning the agreement among co-conspirators to commit sex trafficking, how either of the defendants acted to recruit, entice, harbor, transport, provide, obtain or maintain the alleged minor victims, or how the defendants otherwise "cause[d]" the minors to engage in commercial sex acts.  Not a single specific allegation exists in the Indictment to support the charges against Mr. Bridges.  Indeed, the bare-bones charges are a carbon copy of 18 U.S.C. §1591, and nothing else.

## II.    DISCUSSION

Mr. Bridges moves to dismiss the Indictment for failure to set forth sufficient factual orientation to comport with Rule 7 of the Federal Rules of Criminal Procedure, as well as the Fifth and Sixth Amendments to the United States Constitution.

A federal indictment must set forth the "essential facts" of the charged offense in a "plain, concise, and definite" statement. Fed. R. Crim. P. 7(c)(1).  The Rule "performs three constitutionally required functions."  United States v. Walsh, 194 F.3d 37, 44 (2d Cir. 1999); United States v. Goldstein, 502 F.2d 526, 529 (3d Cir. 1974) (en banc).

First, the "essential facts" rule gives effect to the Fifth Amendment stricture[1] that no person be made to stand trial on a serious federal charge except upon indictment by a grand jury. United States v. DeCavalcante, 440 F.2d 1264, 1269-70 (3d Cir. 1971) (defendant may be tried only on "specific charge" brought by grand jury).  If an indictment is too generic, it cannot ensure that a "conviction would arise out of the theory of guilt presented to the grand jury." United States v. Resendiz-Ponce, 549 U.S. 102, 109-110 (2007).  Failure to state the essential

---

[1] "No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury . . . ."  U.S. Const. Amend. V.

facts thus disables the "screening process of the grand jury." Goldstein, 502 F.2d at 529, depriving the accused of the right to have the contours of a serious federal charge approved, at the outset, by a "group of his fellow citizens acting independently of either prosecuting attorney or judge." Stirone v. United States, 361 U.S. 212, 218 (1960). Instead, a prosecutor may "obtain a conviction based wholly on evidence of an incident completely divorced from that upon which the grand jury based its indictment." United States v. Tomasetta, 429 F.2d 978, 980 (1st Cir. 1970).

Second, the "essential facts" rule protects a defendant's Sixth Amendment right "to be informed of the nature and cause of the accusation." To satisfy this notice dimension of the rule, the indictment must provide "sufficient factual orientation to permit a defendant to prepare his defense." United States v. Stevenson, 832 F.3d 412, 424 (3d Cir. 2016) (internal quotation marks and citations omitted). The third constitutional guarantee at stake is the right not "to be twice put in jeopardy" for the same offense. Hamling v. United States, 418 U.S. 87, 117 (1974); Valentine v. Konteh, 395 F.3d 626, 631 (6th Cir. 2005). In this respect, the Fifth Amendment requires that the indictment enable the defendant "to show with accuracy" the offense of acquittal or conviction. United States v. Willis, 844 F.3d 155, 161 (3d Cir. 2016).

In summary, an indictment will be deemed sufficient if it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." United States v. Kemp, 500 F.3d 257, 280 (3d Cir. 2007) (internal quotation marks omitted).

    A.    **The Indictment must set forth specific facts.**

The degree of specificity entailed by the "essential facts" requirement varies from one offense to another. Resendiz-Ponce, 549 U.S. at 109 ("[W]hile an indictment parroting the

language of a federal criminal statute is often sufficient, there are crimes that must be charged with greater specificity."); Tomasetta, 429 F.2d at 979 ("[W]hat is a fair description of a crime for purposes of permitting an adequate defense necessarily varies with the nature of the offense and the peculiarities of defending against the kind of charge involved."). In some instances it is enough for an indictment to state when and where the defendant engaged in conduct specifically defined by statute. For example, a statement of date and location suffices when the charge is possessing a firearm after previous conviction of a felony. 18 U.S.C. §922(g); United States v. Huet, 665 F.3d 588, 596, 599 (3d Cir. 2012) (date and address). Or, attempting to enter the United States after prior deportation. 8 U.S.C. §1326(a); Resendiz-Ponce, 549 U.S. at 108 (date and checkpoint).

But where "the language of a statute . . . contains generalities, the indictment must factually define those generalities, descending into particulars." United States v. Moyer, 674 F.3d 192, 203 (3d Cir. 2012). Generic language "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." Hamling, 418 U.S. at 117-18.

The leading decision on when recitation of the statutory language is not sufficient is Russell v. United States, 369 U.S. 749 (1962). There the Supreme Court considered a group of convictions under a statute making it a misdemeanor to refuse to answer any "question pertinent to the question under inquiry" when summoned by a congressional subcommittee. 2 U.S.C. §192. In each case the indictment had specifically stated what questions the defendant had refused to answer, but nowhere had the indictment identified the subject of the inquiry, instead simply reciting the "pertinent to the question under inquiry" language. Id. at 752 & n.4. The Court held the omission fatal to the charges, stressing that the pertinence element defined the

"very core of criminality" under the statute and was "central to every prosecution." Id. at 764. Mere recitation of the statutory language exposed a defendant to trial "with the chief issue undefined," Id. at 766, leaving him to be "met with a different theory" at each stage of the proceeding while freeing the prosecution "to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal." Id. at 768.

The Third Circuit applied Russell to hold an information insufficient in Government of the Virgin Islands v. Pemberton, 813 F.2d 626 (3d Cir. 1987). There, the charging instrument described the means of the alleged burglary in detail, named the particular office unlawfully entered, and identified the particular day on which the burglary allegedly occurred. Pemberton, 813 F.2d at 630 n.4. The Court nonetheless held the charge insufficient because it did not state what crime the defendant intended to commit upon entry, thus failing to "apprise[] the defendant of what he must be prepared to meet." Id. at 632.

In elaborating its rationale, the Court focused on the importance and variability of the target-offense element in prosecutions under the statute:

> [I]n burglary prosecutions . . . the actual proof at trial involves evidence of at least two crimes, the unlawful entry and the intent to commit the ulterior crime. In addition, the specific intent is ordinarily the most important element of the crime because it may be the most difficult to prove. When the ulterior crime can range from crimes like murder, assault and rape to arson and larceny there is a particular need for specificity because of the wide variations in the elements of such ulterior offenses.

813 F.2d at 632 (quoting United States v. Thomas, 444 F.2d 919, 923 (D.C. Cir. 1971)).

In accordance with Pemberton, other courts have likewise dismissed indictments that failed to set forth with specificity the facts essential to a core element of the offense. See, e.g., United States v. McGarity, 669 F.3d 1218, 1238-1240 (11th Cir. 2012) (holding indictment insufficient to charge witness tampering in violation of 18 U.S.C. §1512(c) where not stated what official proceeding was obstructed); Valentine, 395 F.3d at 632-34 (indictment insufficient

to charge multiple counts of child sexual abuse where no differentiation among counts by specification of such facts as location, time of day, or sexual acts); United States v. Nance, 533 F.2d 699, 700-01 (D.C. Cir. 1976) (holding indictment insufficient to charge false pretenses where, though subject counts set forth names of victims with corresponding dates and amounts, counts did not state "factual particulars of the false representations," the "very core of the offense"); Tomasetta, 429 F.2d at 980-81 (holding indictment alleging loansharking in violation of 18 U.S.C. §894 defective where it failed to allege means by which threats communicated, specify location with more precision than the city of Worcester, Mass., or name victim); United States v. Thompson, 141 F. Supp. 3d 188, 194-95 (E.D.N.Y. 2015) (Glasser, J.) (holding indictment alleging aggravated sexual abuse of a minor insufficient in referring to "sexual activity" without specifying particular act).

      B.     **The Indictment in this case lacks sufficient factual specificity.**

Each count in the Indictment charging Mr. Bridges with Sex Trafficking tracks the statutory language verbatim; this recitation of §1591's language fails to state "essential facts" within the meaning of Rule 7, and thus disserves the several constitutional guarantees given effect by that provision. The generic character of the terms describing the ways in which a victim can be trafficked alone should compel this Court to find that the indictment must go beyond the statutory language of "recruited, enticed, harbored, transported, provided, obtained, and maintained." Indeed, those terms are not defined in the statute, and the terms, "provide," "obtain," and "maintain," in particular, are dangerously vague so as to leave the prosecution enormous latitude in forming different theories at each state of the proceedings. Because these generic terms defining the offense's "core of criminality," the government failed to meet the requirement to plead essential facts with great specificity.

As a result, Mr. Bridges is left wondering how he is alleged to have recruited, enticed, harbored, transported, provided, obtained and maintained each victim. Did he provide them shelter, put them up in hotels, drive them to dates with customers ("johns"), or seek them out on the internet and convince them to work for him? The Indictment leaves Mr. Bridges completely guessing as to what he is alleged to have done, all while allegedly knowing these minors would be caused to engage in a commercial sex act. In addition, nothing else in the Indictment supplies any basis for deducing what facts the government intends to prove. Most notably, the Indictment fails to identify the prostitutes by more than initials, and fails to narrow the allegations down to concrete time frames or locations. Although evidence produced in discovery reveals that Mr. Bridges stopped and the vehicle he was driving was stopped July 12, 2017 outside a Motel 6 in Philadelphia and subsequently impounded and searched, there is no other evidence — and the Indictment fails to allege — any other specific dates or locations of purported illegal activity. Indeed, the time identified for the alleged violations span over a five-year period (Count Two), four months (Count Three), a year and-a-half (Count Four) and a month and-a-half (Counts Five and Six). As to location, the Indictment directed the defense only to Delaware County, Philadelphia, the Eastern District of Pennsylvania, and elsewhere. There are no addresses or locations provided for where the prostitutes were allegedly recruited, harbored, maintained, or obtained. The Indictment's bald allegations do not apportion any conduct to any specific defendant.

Similarly, the conspiracy count fails to identify any alleged coconspirators, facts revealing the nature of the agreement, or acts performed in furtherance of the conspiracy. The Indictment also fails to provide any indication as to what role each defendant purportedly played in the conspiracy. Further, the nearly six-year time span of the alleged conspiracy renders it

especially difficult for Mr. Bridges to anticipate his defense against acts made within this long period and increases the possibility of surprise at trial.

It is clear the "need for specificity" in this case is great, as the "wide variations in the elements" of the sex trafficking statute leave Mr. Bridges unable to properly prepare his defense. Pemberton, 813 F.2d at 632. The myriad omissions leaves the defense in a position where it might be "met with a different theory, or by no theory at all," at each stage of the proceeding, while the prosecution "roam[s] at large" through the capacious field of liability suggested by the statute's generic terms without necessarily adhering to the theory of criminality presented to the grand jury. Russell, 369 U.S. at 768. The omissions also fail to provide sufficient factual orientation to permit the defense to deduce what specific trafficking methods the government intends to prove,[2] and indeed against whom Mr. Bridges is accused of using such methods. The lack of specificity in the indictment severely impairs Mr. Bridges's ability to conduct an effective and thorough defense investigation, to adequately prepare a cogent defense strategy for trial, and to meaningfully engage Mr. Bridges in the process of evaluating the evidence against him and preparing his case for trial. The same paucity of facts will also prevent Mr. Bridges from pleading any future bar to re-prosecution. The Court should accordingly dismiss Counts One through Six of the Indictment as lacking the requisite specificity.

### III.   CONCLUSION

For all the reasons set forth above, Mr. Bridges respectfully requests that the Court dismiss Counts One through Six of the Indictment against him.

---

[2] When evaluating a challenge to the validity of the indictment under Rule 12(b)(3)(B), the court must limit its inquiry to a consideration of the facts alleged within the four corners of the indictment. United States v. Stock, 728 F.3d 287, 301 (3d Cir. 2013) (citing Huet, 665 F.3d at 595-96). For these reasons, the government cannot claim that providing discovery or more detailed allegations in its other pleadings cures the fatal defects in the Indictment.

        Respectfully submitted,


        */s/ Andrew Montroy*
Law Offices of Andrew David Montroy
By:  Andrew David Montroy, Esquire
1500 Walnut Street, 22nd Floor
Philadelphia, PA  19102
(215) 735-1850
amontroy@gmail.com
Attorney for Defendant Bridges

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case #2:18-cr-00193-NIQA-1 |
| | : | |
| DKYLE JAMAL BRIDGES | : | |

## CERTIFICATE OF SERVICE

I, Andrew David Montroy, Esquire, hereby certify that I am this day electronically filing Defendant's Motion to Dismiss Indictment and supporting Memorandum of Law, as well as serving a true and correct copy of same upon the following by first class mail, postage prepaid:

Seth M. Schlessinger, Asst. U.S. Atty.
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106

Leigh Michael Skipper, Esquire
Defender Association of Philadelphia
The Curtis Center, Suite 540 West
Independence Square West
Philadelphia, PA  19106
Attorney for Defendant Jones

                */s/ Andrew Montroy*
Law Offices of Andrew David Montroy
By:  Andrew David Montroy, Esquire
1500 Walnut Street, 22nd Floor
Philadelphia, PA  19102
(215) 735-1850
amontroy@gmail.com
Attorney for Defendant Bridges

DATED:  October 19, 2018