IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : : | |
| v. | : : | Case #2:18-cr-00193-NIQA-1 |
| DKYLE JAMAL BRIDGES | : | |

## ORDER

**AND NOW**, to wit, this _____ day of _____ 2018, this Court having considered Defendant Dkyle Jamal Bridges' Motion to Suppress Physical Evidence, and the Government's response thereto, it is hereby **ORDERED** that the Defendant's Motion is **GRANTED**, and all of the physical evidence seized pursuant to the government's search of 2013 Ford Taurus is hereby **SUPPRESSED**.

BY THE COURT:

_____
*Nitza I Quinones Alejandro, DCJ*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case #2:18-cr-00193-NIQA-1 |
| | : | |
| DKYLE JAMAL BRIDGES | : | |

**DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE**

TO THE HONORABLE NITZA I QUINONES ALEJANDRO, JUDGE OF THE SAID COURT:

Defendant, Dkyle Jamal Bridges, by and through his attorney, Andrew David Montroy, hereby moves to suppress all physical evidence seized from the 2013 Ford Taurus that he was driving on July 12, 2017, including several cellular phones and a laptop computer, that constituted an impermissible general search in violation of the Fourth Amendment. Consequently, the evidence must be suppressed. The facts and law supporting this Motion are set forth in the attached Memorandum of Law, incorporated herein by reference.

**WHEREFORE**, for the reasons set forth in the accompanying Memorandum of Law, as well as any other reasons which may become apparent at a hearing or the Court deems just, Defendant, Dkyle Jamal Bridges, respectfully requests this Honorable Court grant this Motion and suppress all the physical evidence obtained from the 2013 Ford Taurus that he drove on July 12, 2017.

Respectfully submitted,

        */s/ Andrew Montroy*
Law Offices of Andrew David Montroy
By: Andrew David Montroy, Esquire
1500 Walnut Street, 22nd Floor
Philadelphia, PA  19102
(215) 735-1850
amontroy@gmail.com
Attorney for Defendant Bridges

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case #2:18-cr-00193-NIQA-1 |
| | : | |
| DKYLE JAMAL BRIDGES | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE**

Special Agent Nicholas Grill of the Federal Bureau of Investigations ("FBI") applied for a warrant to search the home of Dkyle Bridges after a Confidential Source ("CS") provided the FBI with information that Mr. Bridges was engaged in prostituting a young woman and other female prostitutes. Agent Grill investigated backpage.com and the CS confirmed that the young woman was the individual depicted in the backpage.com advertisements. On July 11, 2017, an undercover Philadelphia Police Officer along with an undercover FBI Agent contacted a phone number advertised on backpage.com for "women seeking men." Officer Weston engaged in a conversation with a woman who was believed to be an alleged prostitute and arranged to meet with her on July 12, 2017 at a Motel 6 in Philadelphia. When undercover officers set-up surveillance, they noticed that the "target vehicle" was parked in close proximity to where the officer had agreed to meet the alleged prostitute. Agent Grill indicated that they were aware that the Defendant drives this specific vehicle. Officers stopped the vehicle for investigative purposes. Another woman, Jordan Lopez-Ervin, was seated in the front passenger seat. Police found that Mr. Bridges did not have a valid driver's license because it was suspended. Subsequently, the vehicle was impounded and taken to the Philadelphia Parking Authority.

The affidavit indicates that there were multiple cell phones, motel keys and condoms in plain view in the vehicle. The warrant is vague in its request for the items to be searched as well as what the contents of what this search may unveil.

For all the reasons set forth below, Mr. Bridges respectfully submits that Agent Grill's search exceeded the scope of the items to be searched for and seized set forth in the warrant and its accompanying documents. The search was therefore an exploratory rummaging through Mr. Bridges' belongings in violation of the Fourth Amendment to the United States Constitution. All evidence seized as a result of this unconstitutional search must be suppressed.

I.   BACKGROUND

The investigation began in November 2016 when two minor individuals were charged in Delaware for prostitution and the FBI identified Mr. Bridges being involved in sex trafficking. On June 20, 2017, the above-referenced CS provided information that a young woman was involved in prostitution[1], that she was a minor and that Mr. Bridges was very violent towards her. (Exhibit "A," Affidavit, ¶5). The FBI found that V3's phone number was connected to backpage.com advertisements that solicit "women seeking men." (Exhibit "A," Affidavit, ¶6).

On July 11, 2017, the FBI along with the Philadelphia Police Department conducted an operation to identify sex trafficking victims and an undercover agent began communicating with V3's associated phone number to solicit sexual relations. On July, 12, 2017, the undercover officer arranged to meet with V3 at the Motel 6 in Philadelphia. He met with V3 in a room and gave her $200 in exchange for sex. (Exhibit "A," Affidavit, ¶8).

While this undercover sting unfolded, agents identified a vehicle that was parked outside of the motel and reference it as the "target vehicle." (Exhibit "A," Affidavit, ¶9). Agents

---

[1] referred to as V3 in the Probable Cause section of the Application for Search Warrant, a copy of which is attached as Exhibit "A."

identified Mr. Bridges as the driver of this vehicle, who attempted to reverse when his vehicle was stopped by law enforcement agents. (Exhibit "A," Affidavit, ¶10).

Agents impounded the vehicle after determining that Mr. Bridges' Delaware license was suspended. Observed inside the vehicle were cellular phones, magnum condoms and hotel keys. (Exhibit "A," Affidavit, ¶11). V3 subsequently told agents that she knew Mr. Bridges, that he was her pimp, that he drove her to the Motel 6, and that she sends him text messages before and after each paid sexual encounter. (Exhibit "A," Affidavit, ¶12).

As a result of this investigation, Agent Grill applied for a search warrant for the search of the 2013 Black Taurus and "any digital storage devices located therein." This warrant sought any cellular phones, electronic media or computers utilized to communicate text messages regarding prostitution and operation and management of prostitutes, as well as photographs and videos demonstrating interstate prostitution. It further sought any documents and receipts related to the operation of prostitution as well as any clothes or belongings identified with sex trafficking victims. (Exhibit "A," Attachment B.)

On July 13, 2017, the affidavit was approved by United States Magistrate Judge David R. Strawbridge on. This is one day after the vehicle was impounded by law enforcement agents. As a result of the search, agents seized three cell phones and a laptop.[2] An extraction was performed on the cell phones and laptop that revealed text message conversations, thousands of photographic images and videos, some of which displayed pornographic images of various women and internet search history for backpage.com advertisements. The warrant and supporting affidavit do not detail how these items will be searched and the information extracted

On May 10, 2018, Mr. Bridges was indicted with one count of Conspiracy to Engage in Sex Trafficking, in violation of 18 U.S.C. §1594(c); two counts of Distribution of Sex

---

[2] Property receipt(s) identifying all items recovered in the search of this vehicle has not been provided to counsel.

Trafficking, in violation of 18 U.S.C. §1591(a)(1), (b)(1); and three counts of Sex Trafficking of Minors Via Force, Threats and Coercion, in violation of 18 U.S.C. §1591(a)(1), (b)(1), (b)(2).

**II.   DISCUSSION**

The agents' search of cellular phones and computer inside Mr. Bridges' vehicle exceeded the scope of what was authorized under the probable cause showing made to Magistrate Strawbridge. By expressly stating that he planned to search all of the cell phones and computer and storage devices, Agent Grill embarked on an exploratory rummaging through Mr. Bridges' belongings in violation of the Fourth Amendment. All of the evidence which flowed from this unlawful search as fruit of the poisonous tree must be suppressed.

**A.   The Agents Lacked Reasonable Suspicion to Stop and Search Mr. Bridges' Vehicle in Violation of the Fourth Amendment.**

The Fourth Amendment to the United States Constitution applies to seizures of the person, as well as seizures of property, including investigatory stops of a vehicle, such as the stop of the vehicle that Mr. Bridges was driving. United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 694-695 (1981); United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574 (1975); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968). An investigatory stop must be justified by some objective manifestation that criminal activity is afoot. Cortez 449 U.S. at 417, 101 S.Ct. at 695; Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637 (1979). Specifically, the officer making the stop must have a "particularized and objective basis for suspecting the particular person stopped of criminal activity." Cortez, 449 U.S. at 417-418, 101 S.Ct. at 695. Furthermore, suppression hinges on whether the officers had a reasonable suspicion to stop Mr. Bridges' car, because "no evidence found during [an unlawful] stop may be used by the government against any occupant of the vehicle unless the government can show that the taint of the illegal stop was purged." United States v. Mosley, 454 F.3d 249, 251 (3d Cir. 2006). The police may only stop a vehicle

where they have "specific, articulable facts that an individual was violating a traffic law at the time of the stop" or where they have reasonable suspicion criminal activity is afoot. United States v. Delfin-Colina, 464 F.3d 392, 397-98 (3d Cir. 2006); United States v. Mathurin, 561 F.3d 170, 174 (3d Cir. 2009) [citations omitted]. Here, neither existed.

An illegal detention requires suppression of later-discovered contraband. Under the "fruit of the poisonous tree" doctrine, all evidence derived from the exploitation of an illegal search or seizure must be suppressed, unless the Government shows that there was a break in the chain of evinces sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation. Brown v. Illinois, 422 U.S. 590, 603-604 (1975); Wong Sun v. United States, 371 U.S. 471, 484-488 (1963). To determine whether the Government has demonstrated that evidence is not a product of the Fourth Amendment violation, the Court must examine the totality of the circumstances surrounding the discovery of the evidence, giving special attention to three factors: (1) the temporal proximity of the detention and the discovery of the evidence; (2) the presence of intervening circumstances; and, (3) the purpose and flagrancy of the initial misconduct. Brown, 422 U.S. at 603-604.

Law Enforcement Agents may not stop an individual without a specific basis that person is suspected of criminal activity. Here, the Agents did not have any information that Mr. Bridges was suspected of engaging in criminal activity on July 12, 2017. While law enforcement was actively engaged in an undercover investigation with an alleged prostitute, there was no evidence that Mr. Bridges was involved. Agents physically blocked his vehicle from leaving the parking lot of the Motel 6 and conducted a search. Furthermore, agents did not allege that Mr. Bridges had violated the motor vehicle code to warrant the stop. This stop was mere guesswork and pretextual and violated his Fourth Amendment protections.

>B.    The Search Warrant Lacked Probable Cause to Believe Evidence of Sex Trafficking Would be Found in Mr. Bridges' Vehicle. The Physical Evidence Must be Suppressed.

The search warrant in this case did not establish probable cause to believe that evidence of the alleged crimes would be found in Mr. Bridges' vehicle. Moreover, the warrants were overbroad because they authorized the search for and seizure of items for which there was no probable cause to believe was evidence of the alleged crimes. The warrant was also general because it left to the agents' discretion what was to be seized as evidence of the charged crimes. These warrants were so lacking in indicia of probable cause that no reasonable federal agent would have relied on them. The proceeds of this search must be suppressed as the fruit of the poisonous tree. Wong Sun v. United States, 371 U.S. 471, 488 (1963).

>1.    The Search Warrant Did Not Make Out Probable Cause To Believe Evidence Of The Charged Crime Would Be Found In Mr. Bridges' Vehicle.

There was very little evidence to corroborate the assertion that the cell phones recovered inside the vehicle would contain evidence of the charged crimes. For these reasons, the warrant affidavit was fatally deficient in making out probable cause to search this vehicle.

A search warrant is only valid if the "magistrate who issued the warrant had a 'substantial basis' for determining that probable cause existed." United States v. Zimmerman, 277 F.3d 426, 432 (3d Cir. 2002) (citing United States v. Harvey, 2 F.3d 1318, 1322 (3d Cir. 1993)). As stated above, Agent Grill's search of the cell phones and computer inside Mr. Bridges' vehicle unreasonably expanded the scope of the search and transformed the endeavor into a general search in violation of the Fourth Amendment. As noted above, the "substantial basis" inquiry requires this Court to evaluate only the facts before the issuing Magistrate Judge (i.e., within the four corners of the affidavit, and not other evidence in the record). United States v. Hodge, 246 F.3d 301, 305 (2001) (quoting, Jones, 994 F.2d at 1055). A Magistrate Judge may only find

probable cause under the totality of the circumstances when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Hodge, 246 F.3d at 305 (quoting, Illinois v. Gates, 462 U.S. 213, 238 (1983) (internal quotation marks omitted)).

The Third Circuit has held that the agents do not need direct evidence linking the place to be searched to the suspected crime. Hodge, 246 F.3d at 305 (citation omitted). Rather, courts may "draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." Id. at 305-306 (citations omitted). In this regard, a Magistrate Judge may give considerable weight to an agent's expert opinion about where evidence is likely to be found. Id. at 307. But even this Rule has it limits.[3]

Indeed, an agent's "experience and expertise, without more, is insufficient to establish probable cause." United States v. Loy, 191 F.3d 360, 366 (3d Cir. 1999). An expert's opinion in a search warrant affidavit must be "tailored to the specific facts of the case to have any value." United States v. Zimmerman, 277 F.3d 426, 433, n. 4 (3d Cir. 2002) (citations omitted). "Rambling boilerplate recitations designed to meet all law enforcement needs do not produce probable cause." Id. (internal quotation marks and citation omitted).The Fourth Amendment requires that law enforcement particularly describe the places to be searched and the property to be seized, which by its terms prohibits the issuance of general warrants. United States v. Christine, 687 F.2d 749, 752 (3d Cir. 1982) (quoting Marron v. United States, 275 U.S. 192, 196 (1927)) ("The particularity requirement 'makes general searches . . . impossible'"). Indeed, the particularity requirement is designed to "prevent the police from undertaking a general,

---

[3] The largest body of case law in this Circuit stems from drug cases in which the Third Circuit has repeatedly held it is reasonable to infer drug dealers are likely to conceal evidence of their activities in their homes. Hodge, 246 F.3d at 306. Even given the strength of this inference in drug cases, law enforcement may not automatically search any drug dealer's home. Indeed, application of this inference must be based on evidence showing: (1) the person suspected of drug dealing is actually a drug dealer; (2) the place to be searched is the home of the dealer; and, (3) the home contains contraband linking it to the dealer's activities. United States v. Stearn, 597 F.3d 540, 559 (3d Cir. 2010) (quoting, United States v. Burton, 288 F.3d 91, 104 (3d Cir. 2002)).

exploratory rummaging through a person's belongings." Bartholomew v. Commonwealth of Pennsylvania, 221 F.3d 425, 428 (3d Cir. 2000).

Courts of Appeals have grappled in recent years with striking an appropriate balance between legitimate law enforcement needs and individuals' privacy interests in their computers when determining the bounds of the Fourth Amendment as it applies to computer searches. "On one hand, it is clear that because criminals can–and often do–hide, mislabel, or manipulate files to conceal criminal activity, a broad, expansive search of the hard drive may be required." United States v. Stabile, 633 F.3d 219, 237 (3d Cir. 2011) (citing United States v. Burgess, 576 F.3d 1078, 1092-94 (10th Cir. 2009); United States v. Mann, 592 F.3d 779, 782 (7th Cir. 2010)). However, the Third Circuit has expressly recognized that "[o]n the other hand, . . . granting the government a *carte blanche* to search *every* file on the hard drive impermissibly transforms a 'limited search into a general one.'" Stabile, 633 F.3d at 237-38 (quoting Marron, 275 U.S. 192, 196 (1927)); United States v. Tracey, 597 F.3d 140, 146 (3d Cir. 2010).

To address these competing concerns, Courts of Appeals have come up with various suggestions for search methodologies that stay faithful to the Fourth Amendment. As the Ninth Circuit has stated:

> We recognize the reality that over-seizing is an inherent part of the electronic search process and proceed on the assumption that, when it comes to the seizure of electronic records, this will be far more common that in the days of paper records. This calls for greater vigilance on the part of judicial officers in striking the right balance between the government's interest in law enforcement and the right of individuals to be free from unreasonable searches and seizures. The process of segregating electronic data that is seizable from that which is not must not become a vehicle for the government to gain access to data which it has no probable cause to collect.

United States v. Comprehensive Drug Testing, Inc., 621 F.3d 1162, 1166 (9th Cir. 2010) (hereinafter "*CDT*"). To strike this balance, Chief Judge Kozinski suggested a number of non-binding guidelines in his concurrence:

1. Magistrate judges should insist that the government waive reliance upon the plain view doctrine in digital evidence cases.[4]

2. Segregation and redaction of electronic data must be done either by specialized personnel or an independent third party. If the segregation is to be done by government computer personnel, the government must agree in the warrant application that the computer personnel will not disclose to the investigators any information other than that which is the target of the warrant.

3. Warrants and subpoenas must disclose the actual risks of destruction of information as well as prior efforts to seize that information in other judicial fora.[5]

4. The government's search protocol must be designed to uncover only the information for which it has probable cause, and only that information may be examined by the case agents.

5. The government must destroy or, if the recipient may lawfully possess it, return non-responsive data, keeping the issuing magistrate informed about when it has done so and what it has kept.

Id. at 1180 (Kozinski, C.J., concurring)

The Tenth Circuit has suggested "methods to avoid searching files of the type not identified in the warrant, such as 'observing files types and titles listed on the directory, doing a key word search for relevant terms, or reading portions of each file stored in the memory.'" Stabile, 633 F.3d at 238 (quoting United States v. Carey, 172 F.3d 1268, 1276 (10th Cir. 1999)). In Burgess, the Tenth Circuit concluded that while a computer search can be "as extensive as reasonably required to locate the items described in the warrant" based on probable cause, "the scope of the search must be 'constrained by content.'" Stabile, 633 F.3d at 238-39 (quoting Burgess, 576 F.3d at 1094) (additional citations omitted).

The Burgess Court explained that in many cases, there may be no workable alternative to looking in many, or even all folders and sometimes the documents that are saved within those

---

[4] In Stabile, the Third Circuit stated its preference for allowing the plain view doctrine to develop in computer cases on a fact-intensive, case-by-case basis. Stabile, 633 F.3d at 241 n. 16.
[5] Agent Grill's affidavit does not identify any specific and immediate risk that the cell phones would be destroyed.

folders.  Burgess, 576 F.3d at 1094.  Even so, the Court suggested that agents should begin a computer search "by using search protocol to structure the search with an analysis of the file structure, followed by a search for suspicious file folders, and then looking for files and types of files most likely to contain the objects of the search by doing keyword searches."  Stabile, 633 F.3d at 239 (citing Burgess, 576 F.3d at 1094).

At issue in Stabile was a detective's search for evidence of financial crimes on the defendant's computer.  During the search, the detective noticed a suspicious folder named "Kazvid," which appeared to contain files with names that connoted child pornography.  The detective opened the files to confirm that they were indeed child pornography.  The issue was whether the file names were noticed in plain view during a proper search, and whether it was proper for the detective to then view the contents of those files.  Stabile, 633 F.3d at 236-37.  Notably, the Stabile Court declined to hold that the officers were authorized to open video files with lurid names when they executed the warrant.  Id. at 242.

The Third Circuit declined to adopt as a requirement any particular search methodology for computer searches in Stabile.  Id. at 238.  The Court did, however, explain all the principles that should guide district courts in assessing whether computer searches were proper.  The Third Circuit espoused the view that there must be some "method[] to avoid searching files of the type not identified in the warrant," and that the scope of the search must be constrained by content.  Id. at 238-39.  As the Court explained, it is necessary to conduct a fact-intensive inquiry in each case.  Id. at 241 n. 16.  While "a thorough computer search requires a broad examination of files on the computer to ensure that file names have not been manipulated to conceal their contents," the officers must not "unreasonably expand the scope of [the] search."  Id. at 241 (citations omitted).

Here, all of the evidence that was seized was done so pursuant to an exploratory rummaging through the items recovered from Mr. Bridges' vehicle. The warrant requirement is meaningless unless the execution of the search is limited by scope in the manner suggested in <u>Stabile</u>. All of the physical evidence obtained through this unconstitutional search must be suppressed.

### III.  CONCLUSION

For all the foregoing reasons, Defendant, Dkyle Jamal Bridges, submits that the agents' search in this case constituted an impermissible general search in violation of the Fourth Amendment, and therefore, respectfully requests that the Court suppress all of the proceeds of the illegal search.

Respectfully submitted,

*/s/ Andrew Montroy*
Law Offices of Andrew David Montroy
By:  Andrew David Montroy, Esquire
1500 Walnut Street, 22nd Floor
Philadelphia, PA  19102
(215) 735-1850
amontroy@gmail.com
Attorney for Defendant Bridges

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case #2:18-cr-00193-NIQA-1 |
| | : | |
| DKYLE JAMAL BRIDGES | : | |

**CERTIFICATE OF SERVICE**

I, Andrew David Montroy, Esquire, hereby certify that I am this day electronically filing Defendant's Motion to Suppress Physical Evidence and supporting Memorandum of Law, as well as serving a true and correct copy of same upon the following by first class mail, postage prepaid:

Seth M. Schlessinger, Asst. U.S. Atty.
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106

Leigh Michael Skipper, Esquire
Defender Association of Philadelphia
The Curtis Center, Suite 540 West
Independence Square West
Philadelphia, PA  19106
Attorney for Defendant Jones

                                                                                */s/ Andrew Montroy*
Law Offices of Andrew David Montroy
By:  Andrew David Montroy, Esquire
1500 Walnut Street, 22nd Floor
Philadelphia, PA  19102
(215) 735-1850
amontroy@gmail.com
Attorney for Defendant Bridges

DATED:  October 19, 2018