IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case #2:18-cr-00193-NIQA-1 |
| | : | |
| DKYLE JAMAL BRIDGES | : | |

## ORDER

**AND NOW**, to wit, this _____ day of _____ 2018, this Court having considered Defendant Dkyle Jamal Bridges' Motion to Compel Grand Jury Transcripts is **GRANTED** and **ORDERED** that this transcripts be provided to the defense forthwith.

BY THE COURT:

_____
*Nitza I Quinones Alejandro, DCJ*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case #2:18-cr-00193-NIQA-1 |
| | : | |
| DKYLE JAMAL BRIDGES | : | |

**DEFENDANT'S MOTION TO COMPEL GRAND JURY TRANSCRIPTS
PURSUANT TO F. R. Crim. P. 6(e)(3)(E)(ii)**

TO THE HONORABLE NITZA I QUINONES ALEJANDRO, JUDGE OF THE SAID COURT:

Defendant, Dkyle Jamal Bridges, by and through his attorney, Andrew David Montroy, hereby moves this Court release the Grand Jury Proceedings to be inspected by the defendant, all federal agents, state police, local law enforcement or witnesses testimonies, that were presented before the Grand Jury or that returned the Indictment against defendants on May 10, 2018 and the Superseding Indictment of November 1, 2018, respectively.  Mr. Bridges requests that the Court hold oral arguments on the within motion at the Court's earliest convenience, but prior to the swearing in of a jury for trial if case proceeds thus.

**WHEREFORE**, for the reasons set forth in the accompanying Memorandum of Law, as well as any other reasons which may become apparent at a hearing or the Court deems just, Defendant, Dkyle Jamal Bridges, respectfully requests this Honorable Court grant this Motion.

Respectfully submitted,

*/s/ Andrew Montroy*
Law Offices of Andrew David Montroy
By:  Andrew David Montroy, Esquire
1500 Walnut Street, 22nd Floor
Philadelphia, PA  19102
(215) 735-1850
amontroy@gmail.com
Attorney for Defendant Bridges

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case #2:18-cr-00193-NIQA-1 |
| | : | |
| DKYLE JAMAL BRIDGES | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO COMPEL GRAND JURY TRANSCRIPTS
PURSUANT TO F. R. Crim. P. 6(e)(3)(E)(ii)**

Pursuant to F.R.Crim.P. 6(e)(3)(E)(ii) the court may authorize disclosure --- at a time, in a manner, and subject to any other conditions that is directs --- of a grand jury matter. According to F.R.Crim.P. 6(e)(3)(F), a petition to disclose a grand jury matter under Rule 6(e)(3)(E)(ii) must be filed in the district where the grand jury convened.

The Third Circuit has recognized that as a result of the Supreme Court's decision in Dennis v. United States, 384 U.S. 855 (1966), there has been a liberalization in the discovery of grand jury testimony. United States v. Budzanosk, 462 F.2d 443, 454 (3rd Cir. 1972). One of the grounds upon which grand jury minutes should be provided is "upon a showing of substantial likelihood of gross or prejudicial irregularities in the conduct of the grand jury." Id.

The Supreme Court of the United States has also repeatedly stated that one purpose of the requirement that an individual be indicted by a grand jury is to place between the prosecutor and the accused an independent body which can evaluate the evidence and determine if the charge is based upon reason. United States v. Gallo, 394 F.Supp. 310. 314 (D. Conn. 1975) (citing Wood v. Georgio, 370 U.S. 375, 390 (1962), and Stirone v. United States, 361 U.S. 212, 218 (1960)).

In order to perform this function properly, the grand jury needs to evaluate the credibility of witnesses and remain free from any potential prejudicial remarks from the prosecutor designed to sway the grand jury and deprive the defendant of this "Substantial Right." Id. The

2

excessive use of hearsay to secure indictments "tends to destroy the historical functions of grand juries in assessing the likelihood of prosecutorial success and tends to destroy the protection from unwarranted prosecutions that grand juries are supposes to afford the defendant who carries a presumption of innocence until proven guilty by a jury of his/her peers.  United States v. Umans, 368 F. 2d 725, 730 (2nd Cir. 1966).

The Second Circuit has developed certain principles restricting the excessive use of hearsay testimony in grand jury proceedings.  United States v. Estepa, 471 F.2d 1132 (2nd Cir. 1972).  The Second Circuit particular concern is to prevent the grand jury from becoming a mere "rubber stamp" endorsing the wishes of a prosecutor as a result of the needless presentation of hearsay testimony in grand jury proceedings." Gallo, 394 F. Supp at 314.  In Estepa, the Court of Appeals "condemned the casual attitude with respect to the presentation of evidence to a grand jury manifested by the decision of the Assistant United States Attorney to rely on (hearsay) testimony . . ." Estepa, 471 F.2d at 1135.

The problem encompasses the potential that the government may, purposefully or unintentionally, mislead the jurors into thinking that the hearsay testimony is actually an eyewitness account, as well as "any conduct of the prosecutor in the presentation of hearsay evidence that does not make clear to the jurors the shoddy merchandise they are getting so they can seek something better if they wish." Gall, 394 F.Supp. at 314.

The Third Circuit in turn has implicitly adopted the reasoning of Estepa, holding that an indictment based upon hearsay is invalid and subject to dismissal, where "(1) non-hearsay evidence is readily available; (2) the grand jury is misled to believe it was hearing direct testimony rather than hearsay; and, (3) there is high probability that had the grand jury heard the eye witness it would not have indicted." United States v. Wander, 601 F.2d 1251, 1260 (3rd Cir.

1979); United States v. Ismaili, 828 F.2d 153, 164 (3rd Cir. 1987); United States v. Helstoski, 635 F.2d 200, 205 (3rd Cir. 1980) (finding problematic the inability of indicting grand jury to observe demeanor of all witnesses who testified because of prosecutor's practice of reading the transcripts of testimony, previously given to each grand jury that considered the matter.)

The right to indictment by an unbiased grand jury is guaranteed by the Fifth Amendment. Costello v. United States, 350 U.S. 359, 100 L.ed. 397, 76 S.Ct. 906 1956. The party moving for court-ordered disclosure bears the burden of demonstrating to the court that (1) the material sought by the party is needed to avoid a possible injustice in another judicial proceeding, (2) the need for disclosure is greater than the need for continued secrecy, and (3) the party's request is structured to cover only the material so needed. Douglas Oil Co. of California v. Petrol Stops Northwest, 491 U.S. 211, 222 (1979).

"To support a motion for a judicially ordered disclosure of grand jury testimony, a party must show a particularized need for that information which outweighs the public interest in secrecy." United States v. McDowell, 888 F.2d 285, 289 (3rd Cir. 1989) (citing Proctor and Gamble, 356 U.S. at 683) (emphasis added).

The Third Circuit has clarified that a particularized need for such information is shown by offering evidence of a "substantial likelihood of gross or prejudicial irregularities in the conduct of the grand jury." United States v. Budzanoski, 462 F.2d 443, 454 (3d Cir. 1972); United States v. Mechanik, 475 U.S. 66, 75 (1986).

I. BACKGROUND

According to records alleged by Special Agent FBI Nicholas, in November of 2016, two juvenile sex trafficking victims were arrested and charged with prostitution in Tinicum, Pennsylvania. Following this arrest, the FBI conducted an investigation and identified D'Kyle

4

Bridges as a main suspect. Mr. Bridges was not identified as a suspect in the Tinicum police paperwork. Furthermore, during this arrest N.G. L.C. and Kristian Jones did not indicate that Mr. Bridges was involved in this crime.

On November 23, 2016 in Newark, Delaware sex trafficking victims by the name of B.T. and Kristen Holley were charged with prostitution, conspiracy and criminal impersonation. During B.T.'s arrest and questioning, she stated that she had a relationship with D'Kyle Bridges, that they were split up and that she had not been in contact with the defendant for three months. B.T. further stated that she was jealous of D'Kyle Bridges for the way he treated other girls and that she never worked for him.

On June 20, 2017, the FBI received information from a confidential source ("CS") who they claimed wanted to remain anonymous. According to the affidavit of probable cause submitted on July 13, 2017, this CS provided the basis of probable cause to search Mr. Bridges vehicle upon its seizure. The government subsequently identified the CS as Karen Allen, mother of B.T., Ms. Allen sent several audio text messages indicating that she had no personal knowledge of the information that she gave to Agents and that it was hearsay because she received it from another individual. (See Exhibit "A" attached hereto).

On July 12, 2017, B.T. is again arrested for prostitution and questioned by agents and indicated that Mr. Bridges was physically abusive and forced her into prostitution and that he was per pimp. She contradicts this statement in the sworn affidavit taken on October 3, 2018 as well as her statement given to Newark police on November 23, 2016.[1]

On July 18, 2017, N.G. gave a statement to Federal Agents that D'Kyle Bridges forced her and LC into prostitution and that he was their pimp. (See Exhibit "B" attached hereto). On November 1, 2018, defendant D'Kyle Bridges is charged in a superseding indictment: Count 1-

---

[1] This statements have previously been provided to the court as attachments in the Franks motion filed by defense

18 U.S.C. §1954(c) conspiracy to engage in sex trafficking via force, fraud and coercion and in sex trafficking of a minor; Counts 2 and 3- 18 U.S.C. §1591 (s) (1), (b) (1), (b) (2), (c), sex trafficking of minors and via force, fraud and coercion. In Count 4 of the Indictment is charged as such: "From in or around November 2015, through on or about September 21, 2017, in Philadelphia and Delaware County, in the Eastern District of Pennsylvania and elsewhere, the defendant(s) knowingly, in and affecting interstate and foreign commerce, recruited, enticed, harbored, transported, provided, obtained, and maintained B.T., a minor, and aided and abetted the same, knowingly, and in reckless disregard of the fact, that means of force, threats of force, fraud, and coercion would be used to cause B.T. to engage in a commercial sext act, and knowing and in reckless disregard of the fact, that B.T. had not attained the age of 18 years, and would be caused to engage in a commercial sex act, and further having a reasonable opportunity to observe B.T. in violation of Title 18, United States Code, Sections 1591 (c)(1), 1591 (b)(1), 1591 (b)(2), 1591 (c) and 2".

Also in the Superseding Indictment of November 1, 2018 under Count Six, "From in or around October 2016, through on or about November 15, 2016 in Delaware County, in the Eastern district of Pennsylvania, and elsewhere, the defendant(s), knowingly, in and affecting interstate and foreign commerce, recruited, enticed, harbored, transported, provided, obtained, and maintained L.C., a minor, and aided and abetted the same, knowing, and in reckless disregard of the fact, that means of force, threats of force, fraud, and coercion would be used to cause L.C. to engage in a commercial sex act, and knowing and in reckless disregard of the fact that L.C. had not attained the age of 18 years, and would be caused to engage in a commercial sex act, and further having had a reasonable opportunity to observe, in violation of Title 18, United States Code, Sections 1591 (a)(1), 1591 (b)(1), 1591 (b)(2), 1591 (c) and 2".

## II. DISCUSSION

B.T.'s sworn affidavit referenced above and previously contradictory statements suggest that her testimony presented to the grand jury was unreliable and biased. This unreliability is further exacerbated by Karen Allen's testimony that she lacked personal knowledge that her information was based completely upon hearsay.

The Third Circuit has stated that prosecutorial misconduct in the procurement of an indictment may be grounds for dismissal, even if indictment was otherwise supported by sufficient evidence, and that any reading of United States v. Bruzgo, 373 F.2d 383 (3rd Cir. 1971), to the contrary would be erroneous. The Third Circuit further held in United States v. Serubo, 604 f.2d 807, 816-817 (3rd Cir. 1979), "Federal courts have an institutional interests, independent of their concern for the rights of the particular defendant in preserving and protecting the appearance and reality of fair practice before the grand jury and thus may dismiss and indictment even in the absence of demonstrable prejudice. Id. at 817; see also, United States v. Birdman, 602 F.2d 597 (3rd Cir. 1979).

As previously stated, B.T. denies that she was beaten and forced into prostitution.

The unbiased nature of the grand jury is further undermined in count 6 of the indictment. This count indicates that Mr. Bridges forced, coerced and beat L.C. into prostitution. This has been directly contradicted by her sworn affidavit. (Attached as Exhibit B)

L.C. stated that she did not associate with D'Kyle Bridges until her 18th birthday and just recently learned his last name. Furthermore, LC states that she never worked for D'Kyle Bridges nor did she ever hear of him being involved in prostitution. Additionally, LC states that it was N.G. who introduced her into the life of prostitution, set up the date and who provided transportation to Motel 6 on November 15, 2016. Id. This sworn statement directly contradicts

information that N.G. provided to the FBI in her 302.  (See Exhibit "C" attached hereto).  According to N.G., Mr. Bridges beat, forced and coerced L.C. into prostitution.  N.G. also stated that Mr. Bridges was responsible for bringing L.C. to Motel 6 on November 15, 2016.

"To support a motion for a judicially ordered disclosure of grand jury testimony, a party must show a particularized need for that information which outweighs the public interest in secrecy."  United States v. McDowell, 888 F.2d 285, 289 (3rd Cir. 1989) (citing, Proctor & Gambel, 356 U.S. at 683).

Mr. Bridges believes that he has met that standard as a result of contradictory statements and uncorroborated information that was presented to the grand jury.  The Third Circuit has clarified that a particularized need for such information is shown by offering evidence of a "substantial likelihood of gross or prejudicial irregularities in the conduct of the grand jury proceedings."  United States v. Budzanoski, 462 F.2d 443, 454 (3rd Cir. 1972); United States v. Mechanik, 475 U.S. 66, 75 (1986).

Costello v. United States, 350 U.S. 359, 362, (1956), states, "The grand jury is an integral part of our Constitutional Heritage which was brought to this country with common law.  The framers, most of them trained in English law and traditions, accepted the grand jury as a basic guarantee of individual liberty; notwithstanding periodic criticisms, much of which is superficial, overlooking relevant history, the grand jury continues to function as a barrier to reckless or unfounded charges . . . Its historic office has been to provide a shield against arbitrary or oppressive action, by insuring that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizen acting under oath and under judicial instruction and guidance."  United States v. Mandujano, 425 U.S. 564 (1976), Justice Brennan Concurring.

### III.   CONCLUSION

For all the foregoing reasons, Defendant, Dkyle Jamal Bridges, respectfully requests that the Court compel the grand jury testimonies be released to the defendant.  Mr. Bridges also requests that the indictment be dismissed with prejudice.

Respectfully submitted,

*/s/ Andrew Montroy*
Law Offices of Andrew David Montroy
By:  Andrew David Montroy, Esquire
1500 Walnut Street, 22nd Floor
Philadelphia, PA  19102
(215) 735-1850
amontroy@gmail.com
Attorney for Defendant Bridges

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case #2:18-cr-00193-NIQA-1 |
| | : | |
| DKYLE JAMAL BRIDGES | : | |

## CERTIFICATE OF SERVICE

I, Andrew David Montroy, Esquire, hereby certify that I am this day electronically filing Defendant's Motion to Compel Grand Jury Transcripts and supporting Memorandum of Law, as well as serving a true and correct copy of same upon the following by first class mail, postage prepaid:

>Seth M. Schlessinger, Asst. U.S. Atty.
>Office of the United States Attorney
>615 Chestnut Street, Suite 1250
>Philadelphia, PA  19106
>
>Leigh Michael Skipper, Esquire
>Defender Association of Philadelphia
>The Curtis Center, Suite 540 West
>Independence Square West
>Philadelphia, PA  19106
>Attorney for Defendant Jones

>          */s/ Andrew Montroy*
>Law Offices of Andrew David Montroy
>By:  Andrew David Montroy, Esquire
>1500 Walnut Street, 22nd Floor
>Philadelphia, PA  19102
>(215) 735-1850
>amontroy@gmail.com
>Attorney for Defendant Bridges

DATED:  February 6, 2019