**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **CRIM. NO. 18-193-1** |
| **DKYLE JAMAL BRIDGES** | : | |
| **KRISTIAN JONES** | : | |
| **ANTHONY JONES** | : | |

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT DKYLE JAMAL BRIDGES' MOTION TO COMPEL GRAND JURY TRANSCRIPTS, AND OPPOSITION TO REQUEST FOR RELIEF UNDER *FRANKS*

Defendant Dkyle Jamal Bridges' Motion to Compel Grand Jury Transcripts (ECF No. 143), like his previously filed Motion to Conduct *Franks* Hearing (ECF No. 121), is predicated on the legally and factually erroneous contention that a change in a civilian witness's account of events long after indictment evinces government misconduct at the investigative stage and a concomitant ground for pretrial relief.   Binding case law, however, makes clear that Bridges is not entitled to disclosure of the grand jury transcripts, to suppression of the evidence seized from his Taurus pursuant to a federal search warrant, or even to an evidentiary hearing regarding that search warrant affidavit, simply because of contradictory statements made by witnesses long after indictment. Indeed, Bridges' filings are a transparent attempt to litigate at the pretrial phase questions of victim credibility arising out of the not-uncommon phenomenon of recantation by vulnerable sex trafficking victims at the hands of their manipulative pimps.   The statements on which Bridges relies are indicative not of government misconduct, but of continued manipulation by the victims' traffickers.   Because Bridges has not met his burden for obtaining relief under well-established Third Circuit and Supreme Court case law, his motions should be denied.

1

## BACKGROUND

As the discovery materials provided to the defense reflect, defendant Bridges led a prostitution enterprise that trafficked numerous adult and minor females throughout southeastern Pennsylvania and other states, over the course of several years, frequently employing violence, threats, coercion, and manipulation to recruit and retain his victims.

On November 15, 2016, Tinicum Township Police recovered minors N.G. and L.C. from a motel where L.C. had just performed a commercial sex date with a customer arranged through Backpage.com.   Defendant Anthony Jones had rented the room, while Defendant Kristian Jones was present in the room at the time law enforcement responded.   N.G. and L.C. both provided statements to law enforcement that same day.    In an audio-recorded statement, L.C. reported, *inter alia*, that Kristian Jones had assisted in her prostitution (including by collecting all the money she earned), and that another male had brought her and N.G. to Tinicum where they met up with Kristian Jones and she was prostituted.   (Disco 23.)   Similarly, N.G. reported that she and L.C. had been driven by Kristian Jones' male friend to the motel where L.C. was prostituted that day. (Disco. 23-24.)   Phones seized from the motel room (and subsequently searched pursuant to consent and a search warrant) revealed, *inter alia*, messages among N.G., Kristian Jones, and Bridges regarding prostitution.   In a follow-up interview with N.G., on July 18, 2017, N.G. confirmed that Bridges was the male who had driven her and L.C. to the motel in November 2016 for the purpose of prostitution, and confirmed that Bridges had forced her to engage in prostitution prior to her November 2016 recovery.   (Disco. 29.)

On November 23, 2016, Newark (Delaware) Police, acting in an undercover capacity, recovered minor B.T. from a motel where she was being offered for prostitution.   In an audio-

recorded statement that same day, B.T. reported, *inter alia*, that her "ex," Dkyle Bridges, was a "pimp"; that he was physically abusive toward her; and that she had assisted him in pimping other females, but she would be unwilling to testify against him.   (Disco. 65.)

In June 2017, law enforcement with the FBI and Philadelphia Police Department spoke with B.T.'s mother, who reported, *inter alia*, that B.T. was being trafficked by Bridges and that Bridges had threatened B.T.'s family.   (Disco. 78.)

In July 2017, Philadelphia Police, acting in an undercover capacity, recovered B.T. from another motel where she was being offered for prostitution; Bridges was in a vehicle in the parking lot.   In an interview with FBI the next day, B.T. confirmed, *inter alia*, that she was being pimped by Bridges, that Bridges beat her, and that Bridges pimped and beat other women who worked for him.   (Disco. 17.)

Throughout the eighteen-month investigation pre-indictment, law enforcement interviewed additional witnesses and reviewed substantial documentary and physical evidence, including digital evidence obtained from cell phones used by the participants in the sex trafficking enterprise, which showed the extent of Bridges' and the Joneses' involvement.

On May 10, 2018, a federal grand jury returned an indictment charging Bridges and Kristian Jones with, *inter alia*, conspiracy to engage in sex trafficking as well as the actual sex trafficking of victims N.G., L.C., and B.T.   ECF No. 1.   On November 1, 2018, a federal grand jury returned a superseding indictment charging Bridges, Kristian Jones, and Anthony Jones with, *inter alia*, conspiracy to engage in sex trafficking as well as the actual sex trafficking of N.G., L.C., and B.T.   ECF No. 74.

On January 18, 2019, Bridges filed a Motion to Conduct *Franks* Hearing, contending that there were "materially false statements . . . and omitted information" in the search warrant affidavit sworn out by FBI Special Agent Nicholas Grill on July 13, 2017 (which sought to search the Taurus that Bridges had been driving outside of B.T.'s July 12, 2017 commercial sex date).   ECF No. 121 at 2.   Problematically for the relief he sought, however, Bridges' motion did *not* identify any material false statements or information omitted *by the affiant*, Agent Grill.   Rather, Bridges' motion relied on an "Affidavit of B.T." that B.T. swore out for the defense on October 3, 2018, as well as purported audio and text messages between B.T. and her mother on July 27, 2018—all created months after Bridges had been indicted, and of which the Government was unaware until Bridges' 2019 filing.   ECF No. 121-2 (hereinafter "B.T.'s Post-Indictment Defense Affidavit"); ECF No. 121-3 (hereinafter "B.T.'s Post-Indictment Text Messages").

In B.T.'s Post-Indictment Defense Affidavit, B.T. recanted her November 23, 2016, and July 13, 2017, statements to law enforcement implicating Bridges, claiming—not only contrary to those prior statements, but contrary to digital and other evidence—that since the time she was a minor she had always prostituted herself, without any knowledge let alone assistance by Bridges. In B.T.'s Post-Indictment Text Messages, B.T.'s mother reiterated that she legitimately believed Bridges had been trafficking B.T.   *See, e.g.*, ECF No. 121-3 at 2 ("I thought you was in danger. . . . I . . . thought he was holding you and making you prostitute.   I thought he was like a pimp."). B.T. did not refute that belief, instead merely complaining that her mother "[a]ssumed" she was being pimped by Bridges.   *Id.* at 1.

On February 1, 2019, Bridges filed a Motion for Disclosure of Grand Jury Transcripts, suggesting that there was "prosecutorial misconduct" before the grand jury because of

"contradictory statements" made by victims B.T. and L.C.   ECF No. 143 at 7-9.   In addition to citing the above-mentioned post-indictment statements by B.T. and her mother, Bridges attached an "Affidavit of L.C." that L.C. swore out for the defense on October 12, 2018—months after the indictment, and of which the Government was unaware until the 2019 filing.   ECF No. 144 (hereinafter "L.C.'s Post-Indictment Defense Affidavit").   In L.C.'s Post-Indictment Defense Affidavit, L.C. recanted her November 15, 2016 statements to law enforcement implicating Bridges (and Jones), claiming—not only contrary to those prior statements, but contrary to digital and other evidence—that as a minor she had prostituted herself, without any knowledge let alone assistance by Bridges, Jones, or individuals other than N.G.

## ARGUMENT

I.    **BINDING CASE LAW BARS THE RELIEF BRIDGES SEEKS WITH A *FRANKS* HEARING, BECAUSE HE HAS NOT SHOWN, AND CANNOT SHOW, ANY KNOWING OR RECKLESS FALSE STATEMENTS *BY THE AFFIANT*, AGENT GRILL**

Long-standing Supreme Court and Third Circuit precedent make clear that post–search warrant developments, including recantations, do not entitle a defendant to an evidentiary *Franks* hearing.   Rather, a "presumption of validity" attaches to a search warrant affidavit, *Franks v. Delaware*, 438 U.S. 154, 171 (1978), and "[t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine."   *Id.*   "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof."   *Id.*   Put differently, the defendant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" in order to advance to the hearing stage.   *Id.* at 155-56; *see also id.* at 171 (explaining that "[a]ffidavits or sworn or otherwise reliable statements of witnesses [attacking the affiant's

5

truthfulness] should be furnished, or their absence satisfactorily explained," before a defendant may obtain a hearing to pursue his claim).

Critically for purposes of this case, "[t]he deliberate falsity or reckless disregard whose impeachment is permitted [through a hearing] is *only that of the affiant, not of any nongovernmental informant*." *Id.* at 171 (emphasis added); *see also Rugendorf v. United States*, 376 U.S. 528, 533 (1964) (no Fourth Amendment issue when the "erroneous statements . . . were not those of the affiant"); *United States v. Brown*, 3 F.3d 673, 671 (3d Cir. 1993) (reaffirming the "well-established" rule that "a substantial showing of the *informant's* untruthfulness is not sufficient to warrant a *Franks* hearing"). Bridges, however, has not challenged Agent Grill's truthfulness in recounting what he learned in his investigation—including that B.T.'s mother (and B.T.) made such allegations to law enforcement before the affidavit was submitted on July 13, 2017. Bridges simply challenges the underlying truth of the allegations of trafficking—an issue that he may dispute at trial, but that is categorically not a ground for a *Franks* hearing or pretrial relief.

The Third Circuit's decision in *Brown* is squarely on point. There, the affidavit stated that a confidential source was in the defendant's residence, had observed the defendant and "Rodger" packaging cocaine for sale, and observed "Nelson and Shumey" provide heroin there. *Brown*, 3 F.3d at 676. Seeking a *Franks* hearing, the defendant offered his own affidavit denying that he knew "Rodger" and that "Nelson and Shumey" were there; the defendant also offered a transcript of a taped interview of "Shumey" who denied being in the house. *Id.* at 677. The Third Circuit held that the defendant was *not* entitled to an evidentiary hearing challenging the search warrant, explaining that "[e]ven if the events . . . never occurred as allegedly reported by the informant, that

6

shows little or nothing about the affiant's veracity, for it is at least as likely that the officer honestly, or perhaps negligently, believed an untruthful informant as it is that the affiant himself was untruthful.   In fact, the officer's veracity is more probable than the veracity of the informant since the officer provided testimony under oath."   *Id.* at 678.   Furthermore, the fact that "[n]o information in the affidavit was based on independent police investigation of [the defendant]" did not change the analysis.   *Id.* at 676-78.[1]

In sum, there was no reason for Agent Grill to disbelieve B.T.'s mother (or B.T.) when he swore out the search warrant in July 2017, and the affidavit makes clear that Agent Grill was relying on information provided by civilian witnesses in addition to law enforcement's own observations and investigation.   Accordingly, precedent precludes Bridges from challenging the search warrant at the pretrial stage; he may only litigate the truthfulness of the trafficking allegations at trial.

---

[1] *See also, e.g.*, *United States v. Webb*, 499 F. App'x 210, 212 (3d Cir. 2012) ("Even if the events at the bank did not occur as allegedly reported in the affidavit, that sheds little light on the affiant's veracity."); *United States v. Rivera*, 524 F. App'x 821, 826 (3d Cir. 2013) (affirming denial of *Franks* hearing where defendant relied only on conclusory allegations as to the veracity of the information provided by the informant); *United States v. Heilman*, 377 F. App'x 157, 181 (3d Cir. 2010) (affirming denial of *Franks* hearing because "the only aerial surveillance occurred after the last wiretap application was submitted.   Therefore, the lack of information about these forms of surveillance is not an omission.").

II.    **BRIDGES FALLS FAR SHORT OF ESTABLISHING A "PARTICULARIZED NEED" FOR DISCLOSURE OF THE GRAND JURY TRANSCRIPTS—I.E., "A SHOWING OF A SUBSTANTIAL LIKELIHOOD OF GROSS OR PREJUDICIAL IRREGULARITIES IN THE CONDUCT OF THE GRAND JURY"—OUTWEIGHING THE PUBLIC INTEREST IN GRAND JURY SECRECY**

Bridges' request for pretrial disclosure of the grand jury transcripts is similarly contrary to long-established precedent.   As the very case law cited by Bridges makes clear, "a presumption of validity [is] afforded to the grand jury process."   *United States v. Ismaili*, 828 F.2d 153, 163 (3d Cir. 1987).   "An indictment returned by a legally constituted and unbiased jury, . . . if valid on its face, is enough to call for a trial of the charge on the merits.   The Fifth Amendment requires nothing more."   *Id.*   Moreover, because "grand jury proceedings are accorded a presumption of regularity and absent specific evidence of impropriety or irregularity disclosure is not warranted," *United States v. Norris*, No. 03-cr-632 (E.D. Pa. June 24, 2010) (ECF No. 88, at 1 n.1), a defendant seeking disclosure bears the heavy "burden of showing a particularized need that 'outweighs the public interest in secrecy.'"   *Id.* (quoting *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 222, 289 (1979)).   Bridges has not met that burden.

As an initial matter, Bridges predicates his motion on mere guesswork as to who testified before the grand jury and what their testimony may have been.   *See, e.g.*, ECF No. 143 at 8 (seemingly assuming that "B.T.'s . . . testimony [was] presented to the grand jury").   Recognizing that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings," *Douglas Oil*, 441 U.S. at 218, the Government neither confirms nor denies who testified in the grand jury, nor has it disclosed the substance of any testimony.   Bridges is thus left with mere speculation as to the information that was conveyed to the grand jury—and the case law is clear that "mere speculation that such improprieties may have occurred will not suffice to support that showing" needed for disclosure of transcripts.   *United States v. Budzanoski*, 462 F.3d

8

443, 454 (3d Cir. 1972); *see, e.g.*, *id.* at 454-55 (accordingly affirming denial of motion for pretrial discovery of the testimony of four grand jury witnesses); *United States v. Young*, No. 07-710-02, 2008 WL 163045, at *3 n.8 (E.D. Pa. Jan., 17, 2008) (denying request for grand jury materials, noting that the defendant's "speculation that some irregularity occurred during the grand jury proceedings is insufficient to warrant disclosure"); *United States v. Norris*, No. 03-cr-632 (E.D. Pa. June 24, 2010) (ECF No. 88, at 1-2 n.1) ("Defendant proffers only mere speculation that improprieties may have occurred before the grand jury and fails to adduce specific evidence which would demonstrate 'gross or prejudicial irregularities' that warrant disclosure. . . . Regarding Brown's guilty plea and recantation, Defendant merely speculates that the guilty plea may have been used during the grand jury proceedings.").

Similarly deficient is Bridges' concern that "hearsay" may have been presented to the grand jury.   ECF No. 143 at 8.   As the cases that Bridges cites make clear, "[i]t is permissible for an indictment to be based on hearsay evidence."   *United States v. Wander*, 601 F.2d 1251, 1260 (3d Cir. 1979); *see also Ismaili*, 828 F.2d at 163-64 (rejecting defendant's speculative argument that "the fact of the report's hearsay character was concealed from the grand jury"); *cf. United States v. Helstoski*, 635 F.2d 200, 203 (3d Cir. 1980) ("[A] court will not look behind the face of an indictment and invalidate it because the grand jury received inadequate or incompetent evidence.").

Nor do inconsistent statements and recantations by a civilian witness long after return of the indictment establish "gross or prejudicial irregularities in the conduct of the grand jury" warranting disclosure.   "The cases are legion that courts look upon recantation with great suspicion."   *United States v. Williams*, 70 F. App'x 632, 634 (3d Cir. 2004).   In *United States v.*

*Parker*, 58 F. App'x 886 (3d Cir. 2003), for example, the Third Circuit easily rejected the defendant's claim of "government misconduct" when a witness subsequently recanted his account of the defendant's involvement.   *Id.* at 888.   There, the defendant alleged that the witness's testimony was improperly presented when "the government 'knew it was a lie.'"   *Id.*   The Third Circuit disagreed, explaining that the defendant's "allegations [we]re mere conjectures based on [the witness's] attempt [subsequently] to recant his prior statements identifying [the defendant] as the [responsible party]."   *Id.*   It pointed out that the "recantation as to [the defendant's] role [wa]s plainly contradicted" by other evidence.   *Id.*   Moreover, the witness had "waivered because he was afraid that [the defendant] would know he was the one" who had disclosed the defendant's involvement, "not because the government told him to lie."   *Id.*; *see also id.* (noting that "[o]ne could conclude that any lies [the witness] told were his own," not those of government agents). This analysis holds true at the grand jury stage as much as at trial.   *See, e.g.*, *Wander*, 601 F.2d at 1260 (rejecting defendant's contention that "the prosecutor had substantial reason to doubt the credibility of the witness" and that thus there was an "abuse of the grand jury process"); *Drisco v. City of Elizabeth*, No. 03-civ-397, 2010 WL 1253890, at *12 (D.N.J. Mar. 23, 2010) ("Evidence that a witness recanted prior testimony normally need not be presented to the grand jury: '[R]ecantation testimony is generally considered exceedingly unreliable. . . . Partly because recantations are often induced by duress or coercion, . . . the sincerity of a recantation is to be viewed with *extreme suspicion*.'") (citation omitted)).

In sum, Bridges has not shown that the government acted in any way inappropriately during the investigation and prosecution phases.   To the contrary, the recent recantations by the minor sex trafficking victims are consistent with the threats, violence, and manipulation he employed to

recruit and retain the victims of his prostitution enterprise.   He may raise his concerns with the witnesses' accounts of the underlying events at trial.[2]

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the defendant's motion to compel grand jury transcripts and his request for relief under *Franks*.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney


s/ Jessica Urban
SETH M. SCHLESSINGER
Assistant United States Attorney
JESSICA URBAN
Trial Attorney
Child Exploitation & Obscenity Section
U.S. Department of Justice

Dated: <u>February 12, 2019</u>

---

[2] Consistent with the Jencks Act, 18 U.S.C. § 3500, and Fed. R. Crim. P. 26.2, to the extent a witness who testifies at trial previously testified in the grand jury, the Government will disclose for potential use at trial the witness's prior statements related to the subject matter of the trial testimony.   Pretrial disclosure as requested by Bridges is inappropriate.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 12, 2019, I filed this document electronically using the

CM/ECF system and thereby caused a copy of the same to be served on all counsel of record.

                                        s/ Jessica Urban
                                        JESSICA URBAN
                                        Trial Attorney
                                        Child Exploitation & Obscenity Section
                                        U.S. Department of Justice

12