IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case #2:18-cr-00193-NIQA-1 |
| | : | |
| DKYLE JAMAL BRIDGES | : | |

**BRIEF IN SUPPORT OF ORAL ARGUMENT TO GRANT DEFENDANT'S
PRETRIAL MOTION TO SUPPRESS PHYSICAL EVIDENCE**

TO THE HONORABLE NITZA I QUINONES ALEJANDRO, JUDGE OF THE SAID COURT:

Defendant, Dkyle Jamal Bridges, by and through his attorney, Andrew David Montroy, hereby submits this Brief in Support of Oral Argument to Grant Defendant's Pretrial Motion to Suppress Physical Evidence that was presented on February 15, 2019 after the conclusion of testimony of Agent Christopher Jackson.

**I.      INTRODUCTION**

The government presented one witness, Special Agent Christopher Jackson, for purposes of the suppression hearing conducted on February 15, 2019. Agent Jackson testified that an investigation was initiated after two minors were recovered at a Motel 6 in November 2016. He further testified that another minor was arrested in a prostitution ring in November 2016 and that he received information about 30 days later from FBI Baltimore that Mr. Bridges' name was mentioned in this recovery. (N.T., 2/15/19, pp. 49-50[1]). Agent Jackson also testified that two phones seized from the arrest at Motel 6 reflected Mr. Bridges' name in those phones including text messages sent and received. His investigation continued and he identified a Black Ford Taurus that he observed in Delaware and then again at a Motel 6 in Delaware bearing tags that were registered to Camille Bridges. (N.T., 2/15/19, p. 52). He received further information in

---

[1] Relevant portions of the February 15, 2019 transcript are collectively attached as Exhibit "A."

1

May 2017 that Mr. Bridges was involved in an altercation with Jordan Lopez-Ervin, who had an active warrant for prostitution. As his investigation continued, Agent Jackson he spoke with the mother of a minor identified as "BT" in June 2017. She indicated that BT worked for Mr. Bridges as a prostitute, that he was abusive towards her and forced her to perform dates. (N.T., 2/15/19, p. 53).

Agent Jackson contacted Police Officer Arthur Weston in order to set-up a sting. BT was the intended target of this sting based upon a back-page advertisement that Agent Jackson recovered. On July 11, 2017, Officer Weston communicated with BT and arranged to meet on July 12, 2017. Agent Jackson surmised that Mr. Bridges might be presented but clearly stated he had no information that Mr. Bridges would be present for the July 12, 2017 sting operation. (N.T., 2/15/19, pp. 63, 95). The agent further testified that they had information that Mr. Bridges drove a dark-colored car, believed to be a Ford Taurus. When law enforcement converged on the parking lot at the Motel 6 on Roosevelt Boulevard in Philadelphia, Agent Jackson testified that he recognized a black Ford Taurus with Delaware plates. As Agent Jackson approached the vehicle, he identified Mr. Bridges as the person seated in the driver's seat and Jordan Lopez-Ervin in the passenger seat. (N.T., 2/15/19, p. 65). The officers and agents ordered Mr. Bridges and Ms. Lopez-Ervin out of the vehicle. Both individuals were patted down and it was later determined that Mr. Bridges' license was suspended. ((N.T., 2/15/19, p. 68).[2] Mr. Bridges' vehicle was subsequently impounded by the Philadelphia Police Department. No Philadelphia police officers testified about this procedure or what steps they took to impound the vehicle. Agent Jackson testified that he did not see the vehicle move at all from the parked location where it was stopped at the Motel 6 parking lot. ((N.T., 2/15/19, p. 94).

---

[2] Agent Jackson did not indicate at what point it was determined that Mr. Bridges' license was suspended but that it was at some time after they were stopped and ordered out of the vehicle.

According to Agent Jackson, he observed several items in the car that included condoms. Agent Jackson was involved in an interview of BT while she was in custody at the Philadelphia Police Department, 750 Race Street. This interview occurred on July 13, 2017 in conflict to what he is recorded on the FBI 302 Report he generated indicating that the interview took place on July 12, 2017. (N.T., 2/15/19, p. 120). In this interview, BT indicated that she worked for Mr. Bridges as a prostitute and that he previously assaulted her and another female prostitute. On July 13, 2017, the agents submitted an application for a search warrant and affidavit for the Ford Taurus. They executed the search on July 14, 2017. Agents recovered several items that included multiple cellular phones. ((N.T., 2/15/19, p. 113).

**II.     ARGUMENT**

The defense moved to suppress all of the items recovered from 2013 black Ford Taurus that was seized on July 12, 2017 and searched as part of the search warrant executed on July 14, 2017. An investigatory stop must be justified by some objective manifestation that criminal activity is afoot. . United States v. Cortez, 449 U.S. 417, 101 S.Ct. 695; Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637 (1979). Specifically, the officer making the stop must have a "particularized and objective basis for suspecting the particular person stopped of criminal activity." Cortez, 449 U.S. at 417-418, 101 S.Ct. at 695. Furthermore, suppression hinges on whether the officers had a reasonable suspicion to stop the car, because "no evidence found during [an unlawful] stop may be used by the government against any occupant of the vehicle unless the government can show that the taint of the illegal stop was purged." United States v. Mosley, 454 F.3d 249, 251 (3d Cir. 2006). The police may only stop a vehicle where they have "specific, articulable facts that an individual was violating a traffic law at the time of the stop" or where they have reasonable suspicion criminal activity is afoot. United States v. Delfin-Colina,

464 F.3d 392, 397-98 (3d Cir. 2006). Here, the stop and impoundment of the vehicle violated Mr. Bridges' Fourth Amendment rights. The subsequent recovery of the items inside the vehicle triggers the "fruit of the poisonous tree doctrine."

> A. **The Agents Lacked Reasonable Suspicion to Stop and Unlawfully Seize and Impound Mr. Bridges' Vehicle in Violation of the Fourth Amendment.**

This was not a lawful stop. The government did not present evidence that Mr. Bridges' violated a traffic law. According to Agent Jackson, Mr. Bridges was in the driver's seat of the vehicle and he believed that the engine was running but admits that he did not recover the keys to the vehicle. Mr. Bridges was seized when Philadelphia Police Officers and federal agents approached his vehicle with guns drawn and ordered him out of the car. (N.T., 2/15/19, p. 94). Agent Jackson testified that an inventory search of the car occurred but that no items were removed from the vehicle. According to Agent Jackson, he assisted the Philadelphia Police with this process. The government presented no documentation or testimonial evidence of the search conducted by Philadelphia Police or the impoundment procedure executed. The Philadelphia Police Department follows *Directive 92* for procedures under the "Live Stop" program, a copy of which is attached as Exhibit "B." The legal requirements of this program fall under Pennsylvania Vehicle Code §6309.2. See Exhibit "C" attached hereto. According to this statute, "If a person operates a motor vehicle or combination on a **highway** or **traffic way** of this Commonwealth while the person's operating privilege is suspended, revoked, canceled, recalled or disqualified or where the person is unlicensed, as verified by an appropriate law enforcement officer in cooperation with the department, the law enforcement officer shall immobilize the vehicle or combination or, in the interest of public safety, direct that the vehicle be towed and stored by the appropriate towing and storage agent pursuant to subsection (c), and the appropriate judicial authority shall be so notified." Here, the defendant was not operating a

vehicle on a highway or traffic way.  This vehicle was seen idling in the parking lot of private property.

Pennsylvania Courts have held the proper procedures required when law enforcement proceeds to "live stop" and impound a vehicle.  In <u>Commonwealth v. Thurman</u>, 872 A.2d 838 (2005), the court held that "Pennsylvania statutes grant the police authority to remove a vehicle to a 'place of safety' if that vehicle is unattended and illegally standing on a roadway in such a manner as to interfere unduly with the normal movement of traffic or if it constitutes a safety hazard."  The court continued that, "Section 3352 is aimed at those vehicles which have been left on the roadways in such a manner as to impede traffic or cause a legitimate safety concern."  Here, the vehicle was neither on a road or highway nor did any circumstance exist in which law enforcement could say that failing to impound the vehicle would cause safety concern.  Furthermore, there is a multi-step process that occurs when law enforcement impounds a vehicle under this program.

The <u>Thurman</u> court and *Directive 92* detail this process.  First, police must confirm that the operator's license is suspended through police radio.  Second, police will notify the Philadelphia Parking Authority and a time check will be provided.  Third, the operator will be notified that the vehicle is being impounded.  Fourth, occupants will either be assisted or transported to their residence or to a nearby safe location but may refuse this assistance.  Fifth, issue any relevant citations.  Sixth, prepare a towed vehicle notice (Form 75-618) that tells operator or the owner how the vehicle can be reclaimed.  (See Exhibit "B").  In the instant matter, the government presented no evidence that any of these procedures were followed by the Philadelphia Police Department including introducing any documentation that confirmed that the vehicle was impounded properly.  Therefore, the unlawful seizure and impoundment of Mr.

5

Bridges' vehicle violated his Fourth Amendment rights and triggered the poisonous fruit doctrine.

Furthermore, the Government asked Agent Jackson several questions on direct examination as to when Mr. Bridges' name was referenced in this investigation. Agent Jackson testified that it was approximately 30 days after the November 23, 2016 prostitution arrest that FBI Baltimore provided his name. (N.T., 2/15/19, p. 50). He then answered further questions indicating that witnesses provided additional information that Mr. Bridges was involved in prostituting sex workers. However, on cross examination, Agent Jackson agreed that between November 15, 2016 and July 12, 2017 he had no knowledge that Mr. Bridges was arrested for any crime, and more specifically, anything connected to the information and dates that he testified to in this hearing. He further was not able to identify Mr. Bridges as the driver of a black Ford Taurus that he surveilled on multiple dates even though he was able to see the person he identified as an unknown black male exit and re-enter the car in broad daylight. (N.T., 2/15/19, pp. 105-106). On July 12, 2017, Agent Jackson had no information that Mr. Bridges would be present at the Motel 6 sting operation. Mr. Bridges did not speak with the undercover Philadelphia Police Officer prior to his being detained. He was not seen driving to the location. He was not seen engaging or interacting with BT. Agent Jackson's testimony of Mr. Bridges' actions was that he was sitting in a parked car in the Motel 6 parking lot with a female passenger in the front seat. The government rests upon observing packages of condoms in this vehicle as evidence of sex trafficking and leaps to the legal conclusion that agents had sufficient probable cause to search the vehicle under the automobile exception.[3] They failed to meet the necessary threshold under reasonable suspicion and probable cause standards.

---

[3] On page 13, footnote 4, of the government's response in opposition to Mr. Bridges' motion filed on November 2, 2018, the government indicated that the warrant itself was unnecessary.

**III.     CONCLUSION**

For all the foregoing reasons, Defendant, Dkyle Jamal Bridges, respectfully requests that this court grant the suppression of the contents seized on July 14, 2017 when the search warrant was subsequently executed on the 2013 black Ford Taurus.[4]

Respectfully submitted,

*/s/ Andrew Montroy*
Law Offices of Andrew David Montroy
By:  Andrew David Montroy, Esquire
1500 Walnut Street, 22nd Floor
Philadelphia, PA  19102
(215) 735-1850
amontroy@gmail.com
Attorney for Defendant Bridges

---

[4] Mr. Bridges rests upon the oral arguments presented at the suppression hearing as well as the written motion to suppress filed on October 19, 2018 in support of the remaining components of his suppression argument.

## CERTIFICATE OF SERVICE

I, Andrew David Montroy, Esquire, hereby certify that I am this day electronically filing Defendant's Brief in Support of Oral Argument to Grant Defendant's Pretrial Motion to Suppress Physical Evidence, as well as serving a true and correct copy of same upon the following by first class mail, postage prepaid:

Seth M. Schlessinger, Asst. U.S. Atty.
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106

Leigh Michael Skipper, Esquire
Defender Association of Philadelphia
The Curtis Center, Suite 540 West
Independence Square West
Philadelphia, PA  19106
Attorney for Defendant Kristian Jones

George Henry Newman, Esquire
George H. Newman & Associates, P.C.
Land Title Building, Suite 2126
100 South Broad Street
Philadelphia, PA  19110
Attorney for Defendant Anthony Jones

*/s/ Andrew Montroy*
Law Offices of Andrew David Montroy
By:  Andrew David Montroy, Esquire
1500 Walnut Street, 22nd Floor
Philadelphia, PA  19102
(215) 735-1850
amontroy@gmail.com
Attorney for Defendant Bridges

DATED:  February 28, 2019